PER CURIAM.
This is an appeal from an order granting appellee’s (defendant below) Motion for Judgment in Accordance with Defendant’s Motion for Directed Verdict. We affirm.
Appellant Wiley worked as a welder for Southeastern Erectors at the Kings Bay naval base in Georgia from June 1985 until October 1985 and again for a brief period of time in 1986. Her activities included scraping fire retardant material off steel beams in order to weld. She filed suit against U.S. Mineral Co., the manufacturer of Blaze Shield, a fireproofing material, sounding in strict liability and negligence, claiming that the product she scraped from the steel beams was Blaze Shield, and that the dust generated by scraping Blaze Shield off the steel beams caused her to develop acute silicosis, a serious, debilitating lung disease. She claimed Blaze Shield contains respirable free crystalline silica, that U.S. Mineral knew or should have known of the health hazards, and failed to give adequate warnings or recommendations to those who would foresee-ably be exposed to the product; and that it is an unreasonably dangerous product. Throughout the proceedings, U.S. Mineral denied that their product contains free crystalline silica. Thus, major issues at trial were whether the product scraped off the beams was Blaze Shield, and whether Blaze Shield contains respirable free crystalline silica.
Wiley testified that there were numerous bags of Blaze Shield present on the jobsite at the time she worked there. She submitted several samples of material to her expert chemist, Newton, for evaluation of the contents, and he testified that according to his analysis, the samples did contain free crystalline silica of respirable size (10 microns or less). Newton further testified that hundreds of chemicals contain silica. (In addition, Newton said his analysis of a lung tissue biopsy slide showed the presence of silica.)
*1088 The difficulty arose in regard to the sources of the samples. Wiley sought production of a sample of Blaze Shield before trial, but U.S. Mineral objected to the request. Wiley did not pursue her discovery request by seeking to compel production. Instead, Wiley obtained samples from two sources. She had a friend obtain one sample of the material from the jobsite where she had worked. He brought it to her in an apparently open Blaze Shield bag.[1] According to Whey, her friend obtained the sample from the Trident building where she had worked, and it looked exactly like the material she had been chipping off in the course of her welding work. The friend who obtained the sample for her did not testify at trial, thus the circumstances under which he obtained the sample were unknown.
The second sample was taken from Wiley’s own tool bag. She testified that she came home from work at Kings Bay covered with dust from scraping off the fire retardant, and that dust was on her tool bag. According to Wiley, the tool bag had been sitting in the back of her ear for about three years prior to the sample being taken. Newton’s analysis indicated the presence of other material, such as cotton and wood fibers, in that sample. Newton testified that the percentage of silicates and glass wool were the same in the samples taken from the tool bag and from the open Blaze Shield bag, so they would appear to come from the same source. However, Newton acknowledged that silica and silicates are not the same thing; silicates contain silica bound with something else, and silicates have a higher threshold limit value than silica.[2] His studies had not involved a quantitative analysis of how much silica was present.
Dr. Fussaro, a chemist for the Industrial Health Foundation, had evaluated samples of Blaze Shield in 1984. He testified that no detectable level of crystalline free silica was found, however, they do not report anything as “zero,” rather, they provide “limits of detection.” He said the pertinent limits of detection were one percent or less for quartz and two percent or less for crystobalite. In other words, given the limits of detection, a total of three percent of free crystalline silica could have been present and not detected in the material he evaluated.
James Verhalen, chairman of U.S. Mineral, testified that Blaze Shield is mostly mineral wool combined with cement and other binders. He also distinguished between silicates and free crystalline silica, and said none of the ingredients of Blaze Shield contain free crystalline silica. He further testified that they recommended the use of respirators in the application of the product, and he recognized that on occasion pieces must be removed after the product is mixed with water and applied, but that it is no longer a loose dusty powder, rather it comes off in chunks, and is like light weight plaster or fiberboard.
While expressing doubts, the trial court denied the defense motion for directed verdict made at the close of the plaintiffs ease, preferring to complete the presentation of evidence, so that if possible, the jury could consider the question. Upon post-trial renewal of the motion, however, the trial court granted a directed verdict in favor of the defense, finding, in pertinent part, that:
[E]ven if it could reasonably be inferred from the evidence that the material produced by the plaintiff was Blaze Shield, there was no direct evidence that it contained free crystalline silica at the time it left the defendant’s possession and defendant has denied that it did. In this case, any inference that free crystalline silica was present in Blaze Shield at the time it left the defendant’s possession does not outweigh all reasonable inferences to the contrary, given the testimony of how and *1089 when the material was obtained by the plaintiff.
The standard of review to be applied by this court is as follows:
In reviewing the propriety of the trial court’s directed verdict, this court must review the facts and inferences to be drawn in a light most favorable to appellant, the nonmoving party_ The directed verdict can only be upheld if there is no evidence or reasonable inference which would support a jury verdict in appellant’s favor.
Jones v. Heil Co., 566 So.2d 565 (Fla. 1st DCA 1990). Applying this standard to the present case, we find that the trial court properly directed a verdict for appellee, therefore we AFFIRM.
JOANOS and LAWRENCE, JJ., concur.
BENTON, J., dissents with written opinion.

. At oral argument, appellant represented, upon questioning from the court, that an open bag was taken from the site. The record appears to support this representation, and does not indicate otherwise. Wiley gave no indication that the bag containing the sample her friend obtained was sealed. She said her friend got the sample "off the Trident Building,” and it looked exactly like what she had been chipping off. Wiley took this sample to Newton. Newton's testimony indicates that Wiley scooped the sample he tested out of a bag that was inside another, plastic, bag.

. There was evidence that the threshold limit value is a means of measuring the amount of a substance a person may safely be exposed to over the course of an eight hour day.